## UNITED STATES BANKRUPTCY COURT
### FOR THE
### WESTERN DISTRICT OF KENTUCKY

IN RE:                                          )
                                                )
JAIME ENRIQUE MONTALVO              )          CASE NO.  02-32629
                                                )
_____Debtor_____)
                                                )
J. BAXTER SCHILLING, TRUSTEE       )
                                                )
                        Plaintiff        )          AP NO.  04-03080
                                                )
v.                                              )
                                                )
KAREN MONTALVO                       )
                                                )
_____Defendant___)

## MEMORANDUM-OPINION

This matter came before the Court for trial on the Complaint of Plaintiff J. Baxter Schilling, Trustee ("Trustee") in bankruptcy for Debtor Jaime Enrique Montalvo ("Debtor") against Defendant Karen Montalvo ("Defendant").  The Court considered the testimony elicited at trial and the submissions of the parties.  For the reasons set forth below, the Court will enter Judgment for the Defendant.  The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 7052.

## **FINDINGS OF FACT**

Defendant Karen Montalvo is the wife of the Debtor.  Debtor and the Defendant married on August 6, 2001.  Debtor and Defendant have lived together since September of 1998.  Between April of 2001 and April of 2002, Debtor and the Defendant had seven children living with them.  This included the Debtor's daughter's boyfriend and a foster child for whom they received no government support.  The Debtor also paid child support for one of his children that did not live with him.

Debtor filed his Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code on April 25, 2002.

The Defendant had a bank account at Fifth Third Bank.  Debtor's name was never on the account and Debtor did not have access to the account.  Debtor had his own bank account at PNC Bank during this time frame and Defendant had no access to this account.

Debtor is an emergency room physician who worked 28 days per month on 12 hour shifts.  Defendant was unemployed during the relevant time period.  Debtor paid the family's rent, utilities and groceries.  Their average monthly grocery bill was between $1,500 to $2,000.  Defendant usually did the grocery shopping for the family.  She did not keep receipts for these purchases.  She also bought the children's clothes.  She paid cash for these items.  Debtor wrote checks to cash and would give Defendant the cash for these purchases.  She did not keep receipts for these transactions.

Defendant transported the children to school and after school activities.  Debtor would write checks to cash on his account and give Defendant the money for ordinary living expenses, such as car repairs and gasoline.  Defendant did not keep receipts of these purchases.

Debtor was responsible for child support and alimony to his former wife.  He sometimes

2

wrote checks for these items, or purchased certified checks to pay these obligations.  On occasion, Defendant purchased certified checks on Debtor's behalf so he could pay his child support, alimony and taxes.

Between 1997 and 2001, Debtor owed various taxing authorities approximately $450,000.

During the relevant time period, the Debtor deposited his checks in his bank account. Defendant received some child support from the fathers of her two children.  Those funds went into Defendant's bank account.  The family's ordinary and necessary living expenses were provided for by the Debtor.  All checks made payable to the Defendant went for ordinary living expenses such as groceries, clothing, rent, car repairs and gasoline.  There was no credible testimony offered to the contrary.

During the year prior to bankruptcy, Debtor transferred to the Defendant approximately $35,995.  Debtor did not list these transfers on his Statement of Financial Affairs filed with his Petition.  Debtor also wrote checks to "cash" in the same time period in the amount of $42,085. Debtor did not disclose these transactions on the Schedules to his Petition.  Debtor did disclose in his Petition that his average monthly food bill was between $1,500 to $2,000.

## LEGAL ANALYSIS

Trustee contends in Counts 1 and 2 of his Complaint that the transfers of funds from Debtor to Defendant are void or voidable pursuant to 11 U.S.C. §544(b), KRS 378.020 and KRS 378.010. In order to succeed on these claims, Trustee had to first establish the existence of a creditor holding an unsecured claim allowable under 11 U.S.C. §502 as of the date of the transfers subject to attack under applicable law.  In re Akin, 64 B.R. 510, 513 (Bankr. W.D. Ky. 1986).  There is no dispute that this element was met by proof of the existence of the debt to the Internal Revenue Service.

Trustee had to then prove that the transfers are voidable under KRS 378.010 and/or KRS 378.020.

Under KRS 378.010, Trustee had to prove that the transfers were made with the intent to delay, hinder or defraud creditors. Such intent may be proven by consideration of the circumstances surrounding the transaction. <u>Spotts v. United States</u>, 335 F. Supp. 2d 761, 767 (E.D. Ky. 2004). Direct evidence of fraud is not necessary. <u>Id.</u> The issue of fraud is commonly determined by certain recognized indicia of fraud, commonly referred to as "badges of fraud." <u>Id.</u> These are circumstances so frequently attendant to fraudulent transfers that an inference of fraud arises from them. <u>Id.</u>, citing <u>United States v. Leggett</u>, 292 F.2d 423, 427 (6th Cir. 1961).

Common examples of "badges of fraud" include inaccuracy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties. <u>Leggett</u>, 292 F.2d at 427. Additional badges of fraud which would support setting aside a conveyance as fraudulent, in the absence of countervailing proof, include reservation of benefits by the transferor, control or dominion of property by the debtor, transfers between persons who are related or occupy a confidential relationship, transfers which contain false statements and recitals as consideration and a transfer by a debtor in anticipation of suit against him or after suit has begun or is pending against him. <u>Spotts</u>, 335 F. Supp. 2d at 767.

In this case, the Trustee contends that the Debtor transferred approximately $36,000 to the Defendant for no consideration. In addition to the confidential relationship between Debtor and Defendant, Trustee contends the Debtor failed to disclose these transfers on the Schedules to his Petition. Trustee argues that these facts establish his case.

The Court finds that the only "badge of fraud" proven by the Trustee was the confidential relationship between the parties as husband and wife/fiancee. Defendant testified that Debtor would

write checks on his PNC account to cash and then give her the cash for such items as food, clothing, rent and utilities for the family home and gasoline and car repairs. The Court does not find it unusual that Defendant did not keep receipts for these items. The Court also does not find that such transfers lack consideration. Debtor had a legal obligation to support his wife and children, a duty that was fulfilled by these transfers. It also is not unusual that Debtor did not list these transfers on the Schedules to his Petition. Debtor did disclose on his Schedules that he spent between $1,500 to $2,000 per month on food. Considering the number of dependents living in the Debtor's home, these figures are not inflated.

In <u>Spotts</u>, the court stated, "Kentucky law provides that when a conveyance is attacked as fraudulent and badges of fraud are shown, the burden of proving good faith is on the transferee." The Court finds that Defendant met this burden. The Trustee only proved that a confidential relationship existed between the Defendant and Debtor. There was no evidence that the method by which Debtor transferred funds to his wife for the purchase of food, clothing and other necessary household items was unusual or done in a manner to delay, hinder or defraud creditors. The Court found both Debtor and his wife to be credible witnesses. The Trustee simply produced no countervailing evidence to discredit their testimony or to prove that the transfers were fraudulent. Accordingly, the Trustee's claim under KRS 378.010 fails.

The Trustee's claim under KRS 378.020 required proof that the transfers were made without sufficient consideration. The Court finds that sufficient consideration existed for the transfers to the Defendant. The Trustee had the burden of proof on this issue. As stated above, the Debtor had a legal obligation to support his wife and children under Kentucky law. <u>See</u>, KRS 404.040 and <u>Faulkner v. Faulkner</u>, 246 Ky. 238, 54 S.W.2d 905 (Ky. 1932). The Debtor met these obligations

by transferring funds to the Defendant for the purchase of these items. Defendant's testimony on this issue was credible and Trustee offered no evidence to contradict this evidence. The Trustee simply failed to carry his burden of proof on this claim.

Courts 3 and 4 of the Complaint are based on 11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §548(a)(1)(B)(I)-(iii). The claim in Count 3, as with the claim asserted under KRS 378.010, fails because there was no evidence presented at trial that the transfers at issue were made with the intent to hinder, delay or defraud any creditor. Again, the Trustee relied heavily on the fact that the parties occupied a confidential relationship as husband and wife/fiancee at the time of the subject transactions. The Court finds that the testimony of the Debtor and his wife as to the use of the funds for ordinary living expenses of the Debtor's household established the absence of fraudulent intent. The Trustee offered no proof to counter this evidence on his claim and Count 3 fails for lack of such evidence.

Under Count 4, the Trustee had the burden to prove by a proponderence of the evidence that the requirements of 11 U.S.C. §548(a)(1)(B) were met. In re Wilkinson, 319 B.R. 134, 138 (Bankr. E.D. Ky.2004). The Trustee was unable to prove that the Debtor received less than the reasonably equivalent value in exchange for the transfers, a required element of the claim. Case law has determined that what amounts to "reasonably equivalent value" under the statute depends on the facts and circumstances of the case. Wilkinson, at 138. Value has been defined as that which provides an economic benefit, either directly or indirectly to the debtor. In re Empire Interiors, Inc., 248 B.R. 305, 308 (Bankr. N.D. Ohio 2000). Debtor, of course, received direct benefit from the transfers because the funds were used to pay his ordinary and necessary living expenses and that of his family. The transfers also satisfied his legal obligation to his dependents. The Trustee failed to

6

establish that Debtor received less than a reasonably equivalent value in exchange for the transfers at issue.

Count 5 of the Complaint asserts that the transfers to Defendant are voidable under 11 U.S.C. §547(b).  The relevant part of the statute provides as follows:

. . . . .

> Except as provided in subsection ( c ) of this section, the trustee may avoid any transfer of an interest of the debtor in property - -
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while debtor was insolvent;
>
> (4) made . . . on or within 90 days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if . . . the case were a case under chapter 7 of this title; . . . the transfer had not been made; and . . . such creditor received payment of such debt to the extent provided by the provision of this title.

All five elements are pre-requisites to the finding of a voidable preference.  In re Arnett, 731 F.2d 358, 360 (6th Cir. 1984).  In the case at bar, there was no evidence establishing that any of the transfers were for or on account of an antecedent debt, i.e., a debt that was owed prior to the transfer.  Accordingly, this claim also fails as a matter of law for lack of evidence on an essential element of the claim.

7

Since the Trustee is not entitled to avoid the transfers at issue, the Trustee is not entitled to recover damages under Count 6 or 7 of the Complaint which seek recovery from Defendant under 11 U.S.C. §550(a) and for prejudgment interest.

## **CONCLUSION**

For all of the above reasons, the Court finds in favor of Defendant, Karen Montalvo against the Plaintiff, J. Baxter Schilling, Trustee.  A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAIME ENRIQUE MONTALVO | ) | CASE NO. 02-32629 |
| | ) | |
| _____Debtor_____ | ) | |
| | ) | |
| J. BAXTER SCHILLING, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | AP NO. 04-03080 |
| | ) | |
| v. | ) | |
| | ) | |
| KAREN MONTALVO | ) | |
| | ) | |
| _____Defendant_____ | ) | |

**JUDGMENT**

Pursuant to Findings of Fact and Conclusions of Law set forth in the Memorandum-Opinion entered this date and herein incorporated by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of Defendant Karen Montalvo on the Complaint of Plaintiff J. Baxter Schilling, Trustee.

This is a final and appealable Judgment and there is no just reason for delay.